MICHAEL RAY HUGHES, Petitioner-Appellant,
v.
STATE OF HAWAl'l, Respondent-Appellee.
No. 28298.
Intermediate Court of Appeals of Hawaii.
July 31, 2008.
Dwight C.H. Lum, for Petitioner-Appellant.
Brandon L.K. Paredes, Deputy Prosecuting Attorney, County of Maui, for Respondent-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding Judge, FOLEY and NAKAMURA, JJ.
Petitioner-Appellant Michael Ray Hughes (Hughes) appeals from the Findings of Fact, Conclusions of Law and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (FOF/COL Dismissing Petition) filed on October 31, 2006 in the Circuit Court of the Second Circuit[1] (circuit court). Hughes filed his Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (Rule 40 Petition) on April 26, 2006, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40.
In the underlying criminal case, a jury found Hughes guilty in 1990 of Attempted Murder in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 707-701 (Count 1); Terroristic Threatening in the First Degree, in violation of HRS § 707-716 (Count 2); Felon in Possession of Firearm, in violation of HRS § 134-7 (Count 3); Felon in Possession of Firearm Ammunition, in violation of HRS § 134-7 (Count 4); and Place to Keep Firearm, in violation of HRS § 134-6 (Count 5). The circuit court sentenced Hughes to life imprisonment without parole on Count 1, five years of imprisonment on each of Counts 2 and 5, and ten years of imprisonment on each of Counts 3 and 4.
Hughes filed an appeal, contending that (1) the circuit court committed reversible error in its instructions to the jury regarding the elements of Counts 3, 4, and 5 because the court failed to instruct the jury on the elements of intent, and (2) he received ineffective assistance of counsel because his trial counsel failed to investigate the case and interview relevant witnesses prior to trial, did not request an included offense instruction on Reckless Endangering in the Second Degree, did not understand the law of self-defense or the law governing voluntary manslaughter, allowed the State to present evidence that Hughes had been abusive to a pregnant female, and allowed the State to present evidence of the peacefulness of Kauai and Poouahi (the victims). The Hawai'i Supreme Court, in its Memorandum Opinion filed May 28, 1991, concluded that (1) although the jury instructions for Counts 3, 4, and 5 did not include the requisite mental states for the charged offenses, this error was harmless and did not contribute to Hughes's convictions, and (2) as to his claim of ineffective assistance of trial counsel, Hughes failed to show the withdrawal of a meritorious defense. The supreme court affirmed Hughes's convictions.
In his Rule 40 Petition, Hughes alleged:
(1) He was denied his constitutional rights to effective assistance of counsel at trial because his trial counsel failed to attempt to cure the severe prejudice caused by jointly trying the felon-in-possession charge with the other charges; was incompetent during jury selection; failed to move for a change of venue; failed to move for a pretrial mental health examination of Hughes; presented an incompetent opening statement that demonstrated a serious lack of preparation; failed to inform the court that Hughes would stipulate to the identification of the decedent, Kauai, to prevent Kauai's father from testifying and generating sympathy and prejudice against Hughes; was incompetent in cross-examining witnesses; failed to inform the court that Hughes would stipulate to facts that would avoid the introduction into evidence of bloodstained clothing; failed to object to testimony that Hughes had been incarcerated; informed the jury that Hughes had been incarcerated for the past year; was unprepared and unfamiliar with the evidence; lacked basic knowledge of criminal law; attempted to have a probation officer and a police officer testify as to legal conclusions; failed to object to testimony that Hughes was a drug dealer; was incompetent during closing argument; never informed Hughes of the State's plea offer; and impaired two potentially meritorious defenses to Hughes's first degree attempted murder charges: that Hughes reasonably believed he needed to employ deadly force to protect himself and that Hughes was acting under the influence of extreme mental and/or emotional disturbance for which there was a reasonable explanation.
(2) He was denied his constitutional right to effective assistance of counsel on appeal because his appellate counsel failed to raise the issues set forth in (1) above.
(3) He was denied his constitutional rights to due process and a fair trial because the circuit court failed to instruct the jury that a material element of Murder in the First Degree that the jury had to find was that the two shootings occurred in the "same incident" or as "part of a common scheme or plan."
(4) His trial counsel was ineffective for not objecting to the circuit court's failure to give the jury instruction set forth in (3).
(5) Jury Instruction No. 15 incorrectly lowered the burden of proof for the state of mind required to convict Hughes of Attempted Murder in the First Degree.
(6) Since Hughes filed his direct appeal, in which he argued that the circuit court erred in failing to instruct the jury on the requisite states of mind applicable to Counts 3, 4, and 5, this court has held that the failure to instruct the jury on the state of mind element is prejudicial and not harmless error.
(7) Because Hughes relied upon his appellate counsel to choose which factual and legal points to present in his direct appeal, Hughes has not "knowingly and understandingly" failed to waive the matters raised in his Rule 40 Petition.
The circuit court denied the Rule 40 Petition without a hearing, concluding that Hughes failed "to assert a colorable claim not waived or previously ruled upon and that his Rule 4 0 Petition was "patently frivolous and without support in the record."
On appeal, Hughes "assigns as error the circuit court's entire `FOF/COL Dismissing Petition[.]'"[2] Despite Hughes's claim that he is challenging all of the circuit court's Findings of Fact (FOF) and Conclusions of Law (COL), Hughes states that he "shall be calling particular attention to the following pertinent findings and conclusions" and then cites to fourteen (COLs 5, 6, 7, 8, 15, 17, 18, 19, 22, 23, 24, 25, 26, and 27) of the circuit court's twenty-seven COLs and none of its FOFs.
As best we can determine, Hughes's argument only addresses COLs 5, 6, 7, 15, 24, 25, and 26. Therefore, Hughes waived all other COLs listed in his points of error. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Hughes's points of error as follows:
COL 5
Ground one of Hughes's Rule 40 Petition claims ineffective assistance of trial counsel. Hughes previously raised the issue of ineffective assistance of trial counsel on direct appeal, and it was ruled on by the Hawai'i Supreme Court. The circuit court did not err in concluding that the issue of ineffective assistance of trial counsel had been either ruled upon in a previous appeal or waived. HRPP Rule 40(a)(3).
COL 6
Hughes challenges the conclusion in COL 6 that only "extraordinary circumstances" can rebut the presumption of HRPP 40(a)(3) that a failure to raise all issues of ineffective trial counsel on direct appeal is a knowing and understanding waiver of those issues. The circuit court did not err in quoting HRPP Rule 40(a) (3) .
COL 7
In challenging COL 7, Hughes argues that ineffective assistance of appellate counsel constitutes "extraordinary circumstances" that would excuse his failure to previously raise issues he now raises. Hughes argues that because he did not receive effective appellate representation he could not have made a knowing and understanding waiver of his ineffective assistance of trial counsel claim.
The circuit court did not err in concluding that if Hughes had made a colorable claim of ineffective assistance of appellate counsel, his issues of ineffective assistance of trial counsel might have escaped waiver because of "extraordinary circumstances." HRPP Rule 40(a)(3). However, the circuit court went on to conclude that Hughes did not establish a colorable claim of ineffective assistance of appellate counsel.
COL 15
Hughes claimed his appellate counsel was ineffective because counsel did not raise every possible error that might show ineffective assistance of trial counsel. The circuit court noted that in his Rule 40 Petition, Hughes pointed to sixteen ways his trial counsel was ineffective. The circuit court concluded that many of Hughes's claims of ineffective assistance of trial counsel were raised in his direct appeal.
Counsel is not required to raise every possible issue on appeal. Briones v. State, 74 Haw. 442, 466, 848 P.2d 966, 977-78 (1993). To establish a claim of ineffective assistance of appellate counsel, Hughes was required to show that when viewed
in light of the entire record, the status of the law, and the space and time limitations inherent in the appellate process, a reasonably competent, informed and diligent criminal attorney would not have omitted that issue.
Domingo v. State, 76 Hawai'i 237, 242, 873 P.2d 775, 780 (1994).
The circuit court did not err in concluding that an informed and diligent criminal attorney would not have included on appeal the additional points Hughes claimed should have been raised. Id.
COLs 24 and 25
Hughes's trial counsel did not object to Jury-Instruction No. 15 (nor was it challenged in Hughes's direct appeal), which instructed the jury on the elements that must be proved to find Hughes guilty of first degree attempted murder. In pertinent part, the instruction provided:
In Count One, the Defendant is charged with the offense of Attempted Murder in the First Degree. A person commits the offense of Attempted Murder in the First Degree if he intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime of Murder in the First Degree by attempting to intentionally or knowingly cause the death of more than one person in the same or separate incident.
(Emphases added.)
Approximately three years after a jury found Hughes guilty of Attempted Murder in the First Degree, the Hawai'i Supreme Court clarified one of the elements of that charge by articulating the requirement that a jury must find the "course of conduct" is to "to be" "'in the same incident,' or `part of a single course of action.'" Briones, 74 Haw. at 452, 848 P.2d at 972.
On appeal, Hughes contends the decision handed down in Briones subsequent to his case is retroactively applicable. Hughes claims that because the trial court gave an erroneous jury-instruction under the Briones rule, his appellate counsel should have raised or at least pointed out the error on direct appeal even though Briones had not yet been decided.
In denying Hughes's Rule 40 Petition, the circuit court considered the issue of retroactive application of the "same incident" Briones rule to Hughes's case. The circuit court stated that if Briones applied retroactively to Hughes's case, then there was plain error:
24. There appears to be no case which specifically addresses the issue of whether the Briones rule should be retroactively applied. If the Briones decision were to be applied retroactively, however, the instruction on attempted murder in the first degree, in combination with the prosecutor's closing argument would warrant a finding of plain error.
However, in COL 25, the circuit court concluded that
under the facts of the case, the error was nevertheless harmless. . . . Therefore, even with the benefit of retroactive application of the Briones rule, Petitioner failed to state a colorable claim on this basis.
The circuit court observed that the trial record showed the" overwhelming weight of the evidence at trial clearly established that [Hughes] shot both [victims] in the same incident." The circuit court concluded that "even if appellate counsel had raised the issue, the facts indicate that any error would be harmless beyond a reasonable doubt." Therefore, the circuit court did not err in concluding Hughes "has not presented a colorable claim to relief on this ground."
COL 26
Hughes argues that the failure of the trial court to instruct the jury on the requisite "state of mind" applicable to Counts 3, 4, and 5 was error. In COL 26, the circuit court pointed out that the Hawai'i Supreme Court had previously held that although erroneous, the jury instructions on the requisite state of mind for Count 3 (felon in possession of a firearm), Count 4 (felon in possession of ammunition), and Count 5 (place to keep firearm) were harmless and did not contribute to Hughes's conviction.
Because the Hawai'i Supreme Court previously held that the instruction did not contribute to Hughes's conviction, the circuit court did not err in ruling that Hughes failed to present a colorable claim on this ground.
Therefore,
The Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody filed on October 31, 2006 in the Circuit Court of the Second Circuit is affirmed. Hughes's counsel's failure to strictly comply with HRAP Rule 28(b)(4) and (7) has made this court's analysis more difficult and time-consuming. Hughes's counsel's failure to comply with HRAP Rule 28(b) in the future may result in sanctions against him.
NOTES
[1] The Honorable Joel E. August presided.
[2] This point is not presented in accordance with Hawai'i Rules of Appellate Procedure Rule 28(b)(4) and will be disregarded.